**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **UNITED STATES OF AMERICA** | **Case No. 26-mj-89** |
| **v.** | |
| **BROWN, Wayne,** | |
| **Defendant.** | |

**<u>UNITED STATES' MEMORANDUM IN SUPPORT OF PRETRIAL DETENTION</u>**

The United States respectfully submits this memorandum in support of its oral motion for detention pending trial under 18 U.S.C. § 3142(f)(1)(E) (felony involving possession of a firearm), as the Defendant, Wayne Brown, is charged with violating 18 U.S.C. § 922(g)(1) (Unlawful Possession of a Firearm and Ammunition by a Person Convicted of a Crime Punishable by Imprisonment for a Term Exceeding One Year). The evidence presented to the Court shows that Mr. Brown poses a demonstrated danger to the public if he were released.

At the young age of 22 years old, Mr. Brown has amassed five convictions over the course of just two years. Between 2023 and 2025, Mr. Brown was convicted, all on separate dates, of Simple Assault, Petit Theft, Attempted Unlawful Possession of Ammunition, Unauthorized Use of a Vehicle, and Carrying a Pistol Without a License.[1] In addition to those convictions, Mr. Brown was indicted in 2025 for Armed Carjacking, Robbery while Armed, and two counts of Possession of a Firearm During a Crime of Violence, that stem from an incident that occurred in August of 2024. What's most concerning, outside of the violent nature and armed element of Mr. Brown's pending 2025 case, is the fact that he was on pretrial supervision in 2023-CDC-004972 and 2023-

---

[1] In addition to the carrying a pistol without a license conviction, Mr. Brown was also convicted of possession of an unregistered firearm, and unlawful possession of ammunition.

CF2-005339 when he is alleged to have committed these armed crimes of violence. Mr. Brown's criminal history has been continuous since 2023 and is escalatory in nature. Given this history and considering the factors specified under 18 U.S.C. § 3142(g), there are no conditions or combination of conditions short of detention that can ensure the safety of our community or guarantee Mr. Brown's appearance in Court.

For the following reasons, the Court should order Mr. Brown detained pending trial.

**<u>BACKGROUND</u>**

On May 14th, 2026, the Victim, reported to the Metro Transit Police Department ("MTPD"), that IT was threatened with a gun aboard Washington Metropolitan Area Transit Authority ("WMATA") Bus 1048 by an unknown male who was later identified as Wayne Donnell BROWN, (hereafter "the Defendant"). The Victim reported that while aboard WMATA Bus 1048, the Defendant and several other patrons were speaking using profanity, and engaging in vulgar language, so the Victim asked the Defendant to cease his vulgar language due to ITs daughter being aboard the bus as well. A verbal argument then ensued aboard the bus between the Defendant and the Victim, and the Victim stated that the Defendant began to put his hands in his pockets as if he had a handgun. The Victim stated that IT could see the handle of a handgun in the Defendant's pocket as they argued. The Victim described the Defendant as a light skinned black male with long dreadlocks, wearing a black jacket and carrying a pink backpack.

On May 15th, 2026, MTPD Detective C. Moore #D917 was assigned to this case and reviewed video surveillance footage captured from cameras aboard WMATA Bus 1048 on May 14th, 2026. The following is a synopsis of the video surveillance footage that Detective Moore reviewed:

- *At approximately 0742 hours, the Defendant boards WMATA Bus 1048 and proceeds to the rear of the bus, sitting in a curb side seat directly behind the rear exit door of the bus.*

- *At approximately 0802 hours, the Defendant walks to the front of the bus but then turns back around and walks back to the rear of the bus. The Victim and ITs daughter also board the bus at the same time.*

- *The Victim sits in the curb side seat directly behind the rear exit door of the bus and the Defendant stands in the aisle directly in front of the rear exit door. While the bus is driving its route, the Defendant and the Victim can be heard talking loudly to each other.*

- *At approximately 0806 hours, the Defendant reaches into his front waistband and walks to the rear of the bus. While in the rear of the bus, the Defendant retrieves a handgun from his waistband and puts it in his front right jacket pocket. The Defendant then returns to where he was standing in front of the rear door and continues to argue with the Victim. At the time that the Defendant adjusted his firearm, WMATA Bus 1048 was in the 2700 block of MLK Avenue SE.*

**Figure 1: the Defendant removes a firearm from his waistband.**



3

*Figure 2: The Defendant's firearm is visible in his right hand.*



*Figure 3: The Defendant moves his firearm into his right jacket pocket.*



Detective Moore captured photographs of the Defendant from the previously mentioned surveillance footage and used the photographs to generate a Be on the Lookout (BOLO) bulletin, which was disseminated to all MTPD personnel. On May 14th, 2026, MTPD Officer J. Ubiera #480, notified MTPD Criminal Investigations Division that he recognized the person in the disseminated photo as a person he previously arrested on September 25th, 2024, for Carrying a Pistol without a License (MTPD CCN: 2024-18438). The person he arrested on that date was Wayne Donnell BROWN. The following day, May 15, 2026, the Victim identified the defendant Wayne Donnell BROWN in a photo array as the individual that argued with IT on the bus.

On May 16, 2026, at approximately 1937 hours, MTPD Officer FitzGerald #1031 was working patrol at the Navy Yard Metro Station located at 1200 Half St SE, Washington, D.C.

5

when he recognized the Defendant, Wayne Donnell BROWN, from the MTPD be on the lookout (BOLO) bulletin that was disseminated in reference to case #2026-11468. Officer Fitzgerald stated that he recognized the Defendant by his physical characteristics and because the Defendant was wearing the same clothing as the individual depicted in the BOLO photo, including the same pink "Sierra" book bag and the same black jacket. Due to the BOLO advising that the Defendant was previously armed with a gun, Officer Fitzgerald and other responding MTPD Officers immediately grabbed the Defendant and detained him in handcuffs. While conducting a protective pat down on the Defendant's right waist band, Officer Fitzgerald felt a hard object consistent with a firearm. Officer Fitzgerald lifted the Defendant's shirt and saw a lavender and silver-colored handgun. MTPD Officer Martinez #1002 recovered the handgun from the Defendant's waistband and gave it to MTPD CSS Anderson #1009 once he arrived on scene. The Defendant was identified by his Washington D.C. identification card as Wayne Brown.

*Figure 4: A firearm is visible in the Defendant's waistband.*



*Figure 5: The Defendant's firearm is removed from his waistband.*



The Defendant advised that he did not have a license to carry a pistol and that he was on probation. The Defendant was placed under arrest, and the arresting officers, during a search incident to arrest, recovered a large open bag of suspect marijuana labeled "Runtz", a sealed bag of suspect marijuana labeled "Gelato Cake", a working scale, 15 rounds of .40 caliber ammunition, and $229.98 of U.S. currency. At approximately 2020 hours, the bag of suspect marijuana labeled "Runtz" field tested positive for marijuana. Both bags of suspect marijuana were weighed together and the total weight was 14.5 ounces.

The firearm that was removed from the Defendant's waistband was a Taurus PT738 TCP, bearing serial number 71992C, that was lavender and silver in color, chambered in .380ACP, and was loaded with 1 round in the chamber and 1 round in the magazine. The firearm appeared to be fully functional, able to expel a projectile by means of an explosion, had a barrel length of less than twelve inches, and is capable of being fired with the use of one hand.

A criminal history check of the Defendant revealed that he was convicted in 2024 CF2 009780 of one count of Carrying a Pistol without a License, one count of Possession of an Unregistered Firearm, and one count of Unlawful Possession of Ammunition out of the Superior Court of the District of Columbia on January 28, 2025. Carrying a Pistol without a License is an offense that carries a term of imprisonment of more than one year, and upon his conviction for that offense in 2024 CF2 009780 the Defendant was sentenced to 16 months incarceration, execution of sentence suspended as to all but 10 months.

On May 20, 2026, the Honorable G. Michael Harvey found probable cause to issue a Criminal Complaint for violations of 18 U.S.C. § 922(g)(1) (Unlawful Possession of a Firearm by a Person Convicted of a Crime Punishable by Imprisonment for a Term Exceeding One Year).

## LEGAL AUTHORITY & ARGUMENT

Under the Bail Reform Act, if the Court determines that "no condition or combination of conditions will reasonably assure the appearance of [a defendant] as required and the safety of any other person and the community," the Court shall order a defendant held pending trial. 18 U.S.C. § 3142(e). When the basis for pretrial detention is the defendant's danger to the community, the government is required to demonstrate the appropriateness of detention by clear and convincing evidence, *United States v. Sabol*, 534 F. Supp. 3d 58, 65 (D.D.C. 2021), whereas a determination that an individual is a flight risk must be supported by a preponderance of the evidence. *United States v. Vasquez-Benitez*, 919 F.3d 546, 551 (D.C. Cir. 2019) (citing *United States v. Bortis*, 785 F.2d 327, 328-29 (D.C. 1986)). [2]

---

[2] Not relevant here, the Act also provides a rebuttable presumption for certain crimes that no conditions or combinations of conditions will assure the safety of the community.  18 U.S.C. § 3142(e).

In making the pretrial detention determination, the "rules concerning the admissibility of evidence in criminal trials do not apply to the presentation and consideration of information at the [detention] hearing." 18 U.S.C. § 3142(f). Specifically, the presentation of hearsay evidence is permitted, and the government may proceed by proffer. *United States v. Smith*, 79 F.3d 1208, 1210 (D.C. Cir. 1996). Moreover, the government is not required to "spell out in precise detail how the government will prove its case at trial, nor specify exactly what sources it will use." *United States v. Martir*, 782 F.2d 1141, 1145 (2d Cir. 1986); *see also United States v. Williams*, 798 F. Supp. 34, 36 (D.D.C. 1992). A pretrial detention hearing should not be used as a discovery device. *See Smith*, 79 F.3d at 1210 and *Williams*, 798 F. Supp. at 36.

### 1.    The United States' Bases for Detention

The United States seeks detention pursuant to § 3142(f)(1)(E) (felony involving possession of a firearm), because Mr. Brown is charged with committing a firearm offense.

As the Court is aware, 18 U.S.C. § 3142(g) enumerates four factors that the Court should analyze in determining whether to detain the defendant pending trial: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant; (3) his history and characteristics; and (4) the nature and seriousness of the danger to any person or the community that would be posed by his release. Each of these factors weigh in favor of pretrial detention in this case. *See* 18 U.S.C. § 3142(g).

### 2.    The Bail Reform Act Factors All Favor Detention Given Mr. Brown's Dangerousness to the Community

When determining whether any condition or combinations of conditions will assure Mr. Brown's appearance and the safety of the community, in light of any applicable presumptions, the Court weighs four factors: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant; (3) the defendant's history and characteristics; and (4) the

9

nature and seriousness of the danger to any person or the community that would be posed by release.  *See* 18 U.S.C. § 3142(g). As set out below, Mr. Brown possessed a firearm on not just one date, but two, and on both occasions he possessed his firearm in a crowded location and surrounded by other people. The way that Mr. Brown possessed his firearm on May 14, 2026, is of the utmost concern. He removed himself from his argument with the victim, repositioned his firearm from his waistband and into his jacket pocket, and then returned to the victim to continue arguing with IT. Given these facts, there is clear and convincing evidence that no condition or combination of conditions will reasonably ensure the safety of the community.

### A.      The Nature and Circumstances of this Offense Merits Detention.

The nature and circumstances of the charged offenses weigh heavily in favor of pretrial detention in this case.  The Bail Reform Act explicitly identifies offenses involving firearms or a "controlled substance" as serious in nature.  *See* 18 U.S.C. § 3142(g). Mr. Brown is charged with illegal possession of a loaded firearm where he possessed it on a crowded bus and in a threatening manner toward the victim whom he was arguing with, and two days later possessed what appears to be the same firearm in a crowded location while also possessing approximately 14 ounces of suspect marijuana, a scale, and over $200 in U.S. currency.

Further supporting the seriousness of the offenses charged, if convicted at trial, Mr. Brown faces a lengthy term of incarceration, including up to 10 years of incarceration if convicted of 922(g)(1).

### B.      The Weight of the Evidence Against Mr. Brown is Formidable.

The second factor to be considered, the weight of the evidence, favors detention.[3]  The

---

[3] While some judges in this Court have indicated that this factor should be given less weight, in *Blackson*, following a thorough review of the text of § 3142 and decisions analyzing this factor, then Chief Judge Howell found that "the weight of the evidence should not automatically be

United States's case against Mr. Brown is considerable: the Victim stated that IT saw the Defendant possessing a firearm while arguing with her on the bus and bus surveillance footage captured the Defendant remove a firearm from his waistband and place it in his jacket pocket. Additionally, law enforcement recovered what appears to be the same firearm from the Defendant's waistband during a protective pat down for weapons when he was stopped by law enforcement on May 16, 2026. As this Court has noted, "if the evidence against a defendant is overwhelming, credible, helpful, and important to the government's case in chief, that may increase the risk that defendant will flee to avoid future court proceedings and may indicate that the defendant is a present danger to himself or the community if the government's allegations later prove to be true." *United States v. Blackson*, No. 23-CR-25 (BAH), 2023 WL 1778194, at *10 (D.D.C. Feb. 6, 2023), *aff'd*, No. 23-3020, 2023 WL 2663034 (D.C. Cir. Mar. 28, 2023). Accordingly, the strength of the evidence against Mr. Brown also weighs in favor of detention.

### C.    <u>Defendant Brown's History and Characteristics Merit Detention.</u>

This third factor, the history and characteristics of the defendant—heavily favors detention. Mr. Brown committed this serious offense after being given an opportunity to be in the community while his Armed Carjacking, Armed Robbery, and Possession of a Firearm During a Crime of Violence case played out. In that case, the victim was idling in his vehicle as he was approached by as many as eight individuals, one being Mr. Brown, and the group then opened the victim's car

---

weighed less than the remaining statutory pretrial detention factors." 2023 WL 1778194, at *8. Instead, "the weight of the evidence against [a] defendant [should] be weighed as all factors are—in accordance with the specific facts of this case—to determine whether pretrial detention is appropriate." *Id.* at *10. In an unpublished opinion, the D.C. Circuit affirmed Judge Howell's decision. *United States v. Blackson*, No. 23-3020, 2023 WL 2663034 (D.C. Cir. Mar. 28, 2023). The Second Circuit reached the same decision after a thorough and careful analysis of the issue. *United States v. Zhe Zhang*, 55 F.4th 141, 149-150 (2d Cir. 2022). This Court should follow *Blackson* and *Zhang;* this factor should be given no less weight than any other factor.

door and forcefully removed the victim from his car. The victim also reported that at least one of these individuals was armed with a firearm, but the victim could not state which of the individuals was armed nor could the victim describe the firearm with any detail. After being removed from ITs car, the victim's shoes were stolen from him, and the suspect identified as Wayne Brown was observed on surveillance footage running in the direction of the victim's now carjacked vehicle with a pair of shoes in his hands.

A month after committing this armed carjacking and armed robbery, Mr. Brown was arrested on September 29, 2024, in the 1200 block of U Street SE after he fled from officers at the Navy Yard Metro Station and dropped a handgun during his struggle to free himself from the officers that were attempting to detain him. The firearm that the defendant dropped during his struggle and flight from officers was a 9mm handgun that was loaded with 10 rounds of 9mm ammunition and with one round in the chamber. The Defendant ultimately pled guilty to this offense and was sentenced to 16 months of incarceration, execution of sentence suspended as to all but 10 months and followed by 1 year of supervised probation. Despite being incarcerated for his possession of an illegal firearm, and despite being placed on probation and offered all the services that probation has to offer, Mr. Brown has decided to continue to engage in criminal behavior and violate the conditions of his probation by possessing an illegal firearm on May 14, 2026, and on May 16, 2026. That Mr. Brown possessed a loaded firearm despite his prior convictions, despite being on pre-trial supervision for an armed offense, and despite being on probation for a firearm possession offense shows that when he is in the community, he arms himself.

12

**D.      The Danger to the Community Created by Mr. Brown's Release Weighs in Favor of Detention**

The D.C. Circuit has noted that "'[w]hen the Government proves by clear and convincing evidence that an arrestee presents an identified and articulable threat to an individual or the community,'" pretrial detention is available to "'disable the arrestee from executing that threat.'" *United States v. Munchel*, 991 F.3d 1273, 1280 (D.C. Cir. 2021) (quoting *United States v. Salerno,* 481 U.S. 739, 755 (1987)).  This requires the Court to make a "forward looking determination" about the Defendant's risk of danger to the community, keeping in mind that detention may be justified even if the Court does not explicitly find that Defendant is a risk of committing acts of violence.  *United States v. Hale-Cusanelli*, 3 F.4th 449, 456 (D.C. Cir. 2021) (citing *Munchel*, 991 F.3d at 1283).

Mr. Brown poses an obvious and articulable threat to the community. As noted above, Mr. Brown has a history of serious criminal convictions and serious arrests. The fact alone that Mr. Brown would procure a firearm after being granted an opportunity to remain on release despite being indicted on charges of Armed Carjacking and Armed Robbery, which carry presumptions of detention in the Superior Court of the District of Columbia, shows that his prior convictions and pretrial supervision will not deter him from continuing to engage in criminal behavior and shows that he has the capacity to continue procuring and possessing illegal firearms. Further, Mr. Brown's manner in which he possessed his firearm on May 14, 2026, underscores this point, seeing that he was so enraged during the argument he had with the victim that he decided to reposition his firearm in order to increase his ease of access to the firearm as he argued with victim, who was seated on the right side of the bus on the opposite side of ITs daughter.

If released to the community, Mr. Brown could be irrationally set off and triggered to revert to threatening and violent conduct as he did on May 14, 2026. This factor, along with the

other three factors, weighs in favor of Mr. Brown's detention without bond pending trial to ensure the safety of the community.

## CONCLUSION

Because all four of the Bail Reform Act factors weigh heavily in favor of pretrial detention, the United States respectfully requests that the Court issue an Order granting the United States' motion that Mr. Brown be held without bond pending trial.

Respectfully submitted,

JEANINE FERRIS PIRRO
United States Attorney

By:     /s/ *Alexaner B. Cook*
ALEXANDER B. COOK
FL Bar No. 1026428
Assistant United States Attorney
601 D Street, N.W.
Washington, D.C. 20530
202-714-6516
Alexander.Cook2@usdoj.gov

14